Michael D. Braun (SBN 167416)
**KUZYK LAW, LLP**
1999 Avenue of the Stars, Ste. 1100
Los Angeles, California 90067
Telephone: (213) 401-4100
Facsimile: (213) 401-0311
Email: mdb@kuzykclassactions.com

Peter N. Wasylyk (pro hac vice pending)
**LAW OFFICES OF PETER N. WASYLYK**
1307 Chalkstone Avenue
Providence, RI 02908
Telephone: (401) 831-7730
Facsimile: (401) 861-6064
Email: pnwlaw@aol.com

*Counsel for Plaintiffs*

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **LAURA WILLIS-ALBRIGO and TIFFANY TAYLOR on behalf of themselves and all others similarly situated,** | **CASE NO.:** '24CV0148 GPC AHG <br><br> **CLASS ACTION** |
| **Plaintiffs,** | |
| **v.** | |
| **MOTTS, LLP and KEURIG DR PEPPER INC.** | |
| **Defendants** | |

Plaintiffs Laura Willis-Albrigo and Tiffany Taylor ("Plaintiffs"), on behalf of themselves and all others similarly situated, bring this class action against Motts, LLP ("Motts") and Keurig Dr Pepper Inc. (collectively "Defendants"), and on the basis of personal knowledge, information and belief, and the investigation of counsel, allege as follows:

## INTRODUCTION

1.    This is a proposed class action on behalf of a nationwide, California and New York class (collectively, "Class") of consumers seeking redress for Defendants' deceptive practices associated with the advertising, labeling, and sale of Mr. & Mrs. T Original Bloody Mary Mix ("Mix" or "Product").



COMPLAINT FOR DAMAGES, EQUITABLE, DECLARATORY, AND INJUNCTIVE RELIEF

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28



2.    Despite unequivocally and boldly claiming that the Product contains "No Added Preservatives," the ingredient deck reveals the inclusion of preservative citric acid, rendering the statement false, misleading, and in violation of the law.

**Contains 95% Juice**

## Nutrition Facts

**Serving size**       **1 Can**

**Amount per serving**

**Calories**     **40**

**% Daily Value**

| | |
|---|---|
| **Total Fat** 0g | **0%** |
| Saturated Fat 0g | **0%** |
| *Trans* Fat 0g | |
| **Cholesterol** 0mg | **0%** |
| **Sodium** 710mg | **31%** |
| **Total Carbohydrate** 8g | **3%** |

WATER, TOMATO CONCENTRATE, VINEGAR, CANE SUGAR, SEA SALT, SALT, ONION POWDER, SPICES, WORCESTERSHIRE SAUCE (WATER, VINEGAR, SALT, SUGAR, MALIC ACID, CARAMEL COLOR, SPICES, MOLASSES, DEXTROSE, XANTHAN GUM), CITRIC ACID, NATURAL FLAVORS, SMOKE FLAVOR, GARLIC & ONION POWDER, ACACIA GUM, GUAR GUM, CELLULOSE GUM), HYDROLYZED CORN PROTEIN, LEMON JUICE CONCENTRATE, PAPRIKA, CAYENNE PEPPER, AUTOLYZED YEAST EXTRACT, NATURAL FLAVORS, GARLIC POWDER, DISODIUM INOSINATE, DISODIUM GUANYLATE, RED CHILI PEPPER.

3. Defendants know that consumers are willing to pay more for beverages that are labeled as preservative free because they perceive it to be a healthier alternative to similar products that contain preservatives. Indeed, Defendants advertise the Products with the intention that consumers rely on the representation made on the packaging that the Products have "No Added Preservatives."

4. Reasonable consumers such as Plaintiffs do not have specialized knowledge necessary to identify ingredients in the Products as being inconsistent with Defendants' advertised claim of "No Added Preservatives."

5. By falsely labeling the Products as having "No Added Preservatives," Defendants have profited from consumers' preference for products that are perceived to be healthier by being preservative free.

6. Throughout the applicable class periods, Defendants have falsely represented the true nature of their Products, and as a result of this false and

COMPLAINT FOR DAMAGES, EQUITABLE, DECLARATORY, AND INJUNCTIVE RELIEF

misleading labeling, were able to sell these Products to hundreds of thousands of unsuspecting consumers throughout New York, California and the United States.

7.     Plaintiffs allege Defendants' conduct is in breach of warranty, violates California's Business and Professions Code § 17200, et. seq., California's Business & Professions Code § l7500, et. seq., California Civil Code § 1750, et seq., N.Y. Gen. Bus. Law § 349 et seq.,  N.Y. Gen. Bus. Law § 350 et seq., and is otherwise grounds for restitution on the basis of quasi-contract/unjust enrichment.

## **JURISDICTION AND VENUE**

8.     Jurisdiction of this Court is proper under 28 U.S.C. § 1332(d)(2). Diversity jurisdiction exists as Plaintiff Taylor is a resident of Queens, New York, Plaintiff Albrigo is a resident of San Diego, California, Defendant Motts, LLP and Keurig Dr Pepper Inc. are Delaware corporations with their principal place of business in Plano, Texas. The amount in controversy exceeds $5,000,000 for the Plaintiffs and members of the Class collectively, exclusive of interest and costs, by virtue of the combined purchase prices paid by Plaintiffs and members of the putative Class, and the profits reaped by Defendants from their transactions with Plaintiffs and the Class, as a direct and proximate result of the wrongful conduct alleged herein, and by virtue of the injunctive and equitable relief sought.

9.     Venue is proper within this judicial district pursuant to 28 U.S.C. § 1391 because a substantial portion of the underlying transactions and events complained of occurred and affected persons and entities located in this judicial district. Defendants have received substantial compensation for affected transactions and business activity in this judicial district.

## **PARTIES**

10.    Plaintiff Tiffany Taylor is a resident of Queens, New York.

11.    Ms. Taylor regularly purchased Mr. & Mrs. T Bloody Mary Mix over the past 4 years from local stores including Stop & Shop and Queens Wine & Liquor.

12.    Ms. Taylor made each of her purchases after reading and relying on Defendants' Product label.

13.    Ms. Taylor believed the representations on the Product's label that, among other things, it contained no added preservatives.

14.    Ms. Taylor believed that Defendants lawfully marketed and sold the Product.

15.    Ms. Taylor relied on Defendants' labeling and was misled thereby.

16.    Ms. Taylor would not have purchased the Product, or would have purchased the Product on different terms, had she known the truth.

17.    Ms. Taylor was injured in fact and lost money as a result of Defendants' improper conduct.

18.    Plaintiff Laura Willis-Albrigo is a resident of San Diego, California.

19.    Ms. Albrigo regularly purchased Mr. & Mrs. T Bloody May Mix over the past 4 years from local stores including Vons, Beverages & More, and Ralphs.

20.    Ms. Albrigo made each of her purchases after reading and relying on Defendants' Product label.

21.    Ms. Albrigo  believed the representations on the Product's label that, among other things, it contained no added preservatives

22. Ms. Albrigo believed that Defendants lawfully marketed and sold the Product.

23. Ms. Albrigo relied on Defendants' labeling and was misled thereby.

24. Ms. Albrigo would not have purchased the Product, or would have purchased the Product on different terms, had she known the truth.

25. Ms. Albrigo was injured in fact and lost money as a result of Defendants' improper conduct.

26. Plaintiffs and members of the Class have been economically damaged by their purchase of the Products because the advertising for the Products was deceptive and/or misleading under New York and California laws and the Products are misbranded; therefore, the Products are worth less than what Plaintiffs and members of the Class paid for them and/or Plaintiffs and members of the Class did not receive what they reasonably intended to receive.

27. Defendant Motts, LLP is incorporated in Delaware and headquartered in Plano Texas. Mott's was founded in 1842 principally selling apple juice and related products.  Over the next 150 years it expanded by acquiring other beverage brands. In 1987 it acquired  Mr. & Mrs. T Bloody Mary mix.  In 2006 Mott's and all its beverages, including the Product at issue here, were acquired by Keurig Dr Pepper.

28. Defendant Keurig Dr Pepper is a publicly traded American beverage and coffeemaker conglomerate headquartered in Plano Texas. It owns numerous brands including Motts and Mr. & Mrs. T.

# GENERAL ALLEGATIONS

## A.    Citric Acid is a Preservative

29.    The federal Food Drug & Cosmetic Act  ("FDCA") defines a chemical preservative as "any chemical that, when added to food, tends to prevent or retard deterioration thereof, but does not include common salt, sugars, vinegars, spices, or oils extracted from spices, substances added to food by direct exposure thereof to wood smoke, or chemicals applied for their insecticidal or herbicidal properties." 21 C.F.R. §101.22(a)(5).  "A food to which a chemical preservative(s) is added shall…. bear a label declaration stating both the common or usual name of the ingredient(s) and a separate description of its function, e.g., "preservative," "to retard spoilage," "a mold inhibitor," "to help protect flavor," or "to promote color retention." 21 C.F.R. §101.22(j).

30.    Chemical preservation is the process of adding ingredients to a food for the purpose of preventing potential damage from oxidation, rancidity, microbial growth, or other undesirable changes. Chemical preservatives may be both natural or synthetic and function one of several ways — (a) as an antimicrobial agent to destroy bacteria or inhibit the growth of mold on foods; (b) as an antioxidant to inhibit oxidation and resulting rancidity; and (3) as a chelating agent which binds metal ions in certain foods to prevent oxidation.

31.    Citric acid is a preservative within the meaning of 21 C.F.R. §101.22. Indeed, in a consumer facing publication, *Food Ingredients and Colors*, the Food and Drug Administration ("FDA") unequivocally identifies "citric acid" as a preservative.[1] The sentiment is echoed in the Substances Added to Food database

---

[1] *Food Ingredients and Colors*, International Food Information Council Foundation and U.S. Food and Drug Administration, specifically identifies the following as preservatives: **ascorbic acid**, **citric acid**, sodium benzoate, calcium propionate, sodium erythorbate, sodium nitrite, calcium sorbate, potassium sorbate, BHA, BHT, EDTA, tocopherols (Vitamin E). Available at

maintained by the FDA, in which the principal technical effects of citric acid are identified as preservative functions. [2] Finally, in a Warning Letter issued to Chiquita Brands International, Inc. and Fresh Express, Incorporated, October 6, 2010, the FDA made clear that citric acid was a preservative and needed to be identified as such. "The "Pineapple Bites" and "Pineapple Bites with Coconut" products are further misbranded within the meaning of section 403(k) of the Act [21 U.S.C. 343(k)] in that they contain the chemical preservatives ascorbic acid and citric acid but their labels fail to declare these preservatives with a description of their functions. 21 CFR 101.22."[3]

32.    Citric acid's primary use is as a preservative, despite potentially having additional functions.[4]  It functions as a preservative in the Products, regardless of Defendants' subjective purpose(s) for adding it to the Products, and regardless of any other functions citric acid may perform. This is even more the case here where Defendants have not declared a contrary purpose for adding citric acid and the Products separately contain flavorings (i.e., "natural flavor") as an ingredient.

---

https://www.fda.gov/files/food/published/Food-Ingredients-and-Colors-%28PDF%29.pdf (last visited October 2, 2023)

[2] The Substances Added to Food Database formerly Everything Added to Foods in the United States, available at https://www.cfsanappsexternal.fda.gov/scripts/fdcc/?set=FoodSubstances&sort=Sortterm_ID&order=ASC&startrow=1&type=basic&search=citric%20acid (last visited October 2, 2023)

[3] http://fda-warning-letters.blogspot.com/2010/10/fresh-express-incorporated-10610.html (last visited October 6, 2023).

[4] See https://fbcindustries.com/citric-acid-one-of-the-most-important-preservatives-in-the-world/ (last visited October 6, 2023).

## B.    Consumer Demand For Preservative Free Products

33.    The clean label movement has been called "the largest shift in American food habits since World War II."[5] The term encompasses many things but is most often associated with foods that are natural, healthy, and devoid of additives and preservatives.[6]

34.    By representing the Product has "No Preservatives," Defendants seek to capitalize on consumer preference for clean label products. Indeed, "[foods bearing 'free-from' claims are increasingly relevant to Americans, as they perceive the products as closely tied to health."[7] "84 percent of Americans buy "free-from" foods because they believe them to be more natural or less processed." Among such consumers, preservative free ranks "[a]mong the top claims… deem[ed] most important." *Id.*

35.    In a survey undertaken by L.E.K, around 1600 consumers were asked which claims were the most important to them when buying food and drink products. Results indicated the most popular claim to be "no artificial ingredients" followed closely by a claim that a product contained "no preservatives.[8]

---

[5] *Clean Labels, Public Relations or Public Health*, Center For Science in the Public Interest (2017), available https://www.cspinet.org/sites/default/files/2022-03/Clean%20Label%20report.pdf (last visited October 6, 2023).

[6] *Clean label trend is evolving - consumers still willing to pay a price premium*, Valio, May 29, 2023. Available at https://www.valio.com/food-solutions-for-companies/articles/clean-label-trend-is-evolving-and-consumers-willing-to-pay-a-price-premium/ (last visited October 6, 2023).

[7] *See, Free-from Food Trends US 2015 Report,* MINTEL, Available at https://www.mintel.com/press-%20centre/food-and-drink/84-of-americans-buy-free-from-foods-because-they-believe-them-to-be-more-natural-or-less-processed (last accessed November 30, 2022).

[8] https://www.lek.com/insights/ei/clean-label-food-ingredients (last visited January 3, 2024).



Figure 2
Percentage of US consumers purchasing 'frequently or always' based on food claim (2018)

Note: Question: How frequently has your household purchased food with the following attributes or claims over the past 12 months when they were available?
Source: L.E.K. Consumer Survey and analysis

36.    By failing to properly label its Products, Defendants have misled and deceived consumers in violation of the laws pled herein.

37.    As a result of Defendants' unlawful and deceptive conduct, Plaintiffs and members of the Class have been harmed.

## **ECONOMIC INJURY**

38.    Plaintiffs sought to buy Products that were lawfully labeled, marketed, and sold.

39.    Plaintiffs saw and relied on Defendants' misleading labeling of its Products.

40.    Plaintiffs believed that the purchased Products contained no preservatives.

41.    Plaintiffs believed that the Products were lawfully marketed and sold.

42.    In reliance on the claims made by Defendants regarding the qualities of their Products, Plaintiffs paid a price premium.

43.     As a result of their reliance on Defendants' misrepresentations, Plaintiffs received Products that contained ingredients which they reasonably believed they did not contain.

44.     Plaintiffs received Products that were unlawfully marketed and sold.

45.     Plaintiffs lost money and thereby suffered injury as they would not have purchased these Products and/or paid as much for them absent the misrepresentation.

46.     Defendants know the claim that the Products are free of preservatives is material to a consumer's purchasing decision.

47.     Plaintiffs altered their positions to their detriment and suffered damages in an amount equal to the amounts they paid for the Products they purchased, and/or in additional amounts attributable to the deception.

48.     By engaging in the false and deceptive conduct alleged herein, Defendants reaped, and continue to reap financial benefits in the form of sales and profits from their Products.

49.     Plaintiffs, however, would be willing to purchase Products again in the future should they be able to rely on Defendants' marketing as truthful and non-deceptive.

## CLASS ACTION ALLEGATIONS

50.     Plaintiffs bring this action on behalf of themselves and on behalf of classes of all others similarly situated consumers defined as follows:

> a. **California:** All persons in California who purchased the Class Products in California during the Class Period [9]
>
> b. **New York:** All persons in New York who purchased the Class Products in New York during the Class Period.
>
> c. **Class Period** is the maximum time allowable as determined by the statute of limitation periods accompanying each cause of action.

51.     Plaintiffs bring this class action pursuant to Federal Rule of Civil Procedure 23(a), and 23(b)(1), 23(b)(2), 23(b)(3) and 23(c)(4).

52.     Excluded from the Classes are: (i) Defendants and their employees, principals, affiliated entities, legal representatives, successors and assigns; and (ii) the judges to whom this action is assigned.

53.     Upon information and belief, there are tens of thousands of members of the Class. Therefore, individual joinder of all members of the Class would be impracticable.

54.     There is a well-defined community of interest in the questions of law and fact affecting the parties represented in this action.

55.     Common questions of law or fact exist as to all members of the Class. These questions predominate over the questions affecting only individual Class members. These common legal or factual questions include but are not limited to:

> a. Whether Defendants marketed, packaged, or sold the Class Products to Plaintiffs and those similarly situated using false, misleading, or deceptive statements or representations;

---

[9] Collectively referred to as "Class or Classes."

b.  Whether Defendants omitted or misrepresented material facts in connection with the sales of their Products;

c.   Whether Defendants participated in and pursued the common course of conduct complained of herein;

d.  Whether Defendants' actions violate the N.Y. Gen. Bus. Laws §§ 349, et seq.;

e.  Whether Defendants' actions violate N.Y. Gen. Bus. Laws §§ 350 et seq.;

f.  Whether Defendants have been unjustly enriched as a result of their unlawful business practices;

g.  Whether Defendants' actions violate the Unfair Competition Law, Cal. Bus. & Prof. Code §§17200, et seq. (the "UCL");

h.  Whether Defendants' actions violate the False Advertising Law, Cal. Bus. & Prof. Code §§17500, et seq. (the "FAL");

i.  Whether Defendants' actions violate the Consumers Legal Remedies Act, Cal. Civ. Code §§1750, et seq. (the "CLRA");

j.  Whether Defendants' actions constitute breach of express warranty;

k.  Whether Defendants should be enjoined from continuing the above-described practices;

l.  Whether Plaintiffs and members of the Class are entitled to declaratory relief; and

m. Whether Defendants should be required to make restitution, disgorge profits, reimburse losses, and pay damages as a result of the above-described practices.

56.  Plaintiffs' claims are typical of the claims of the Class, in that Plaintiffs are consumers who purchased Defendants' Product. Plaintiffs are no different in any relevant respect from any other Class member who purchased the Product, and the relief sought is common to the Class.

57.     Plaintiffs are adequate representatives of the Class because their interests do not conflict with the interests of the members of the Class they seek to represent, and they have retained counsel competent and experienced in conducting complex class action litigation. Plaintiffs and their counsel will adequately protect the interests of the Class.

58.     A class action is superior to other available means for the fair and efficient adjudication of this dispute. The damages suffered by each individual Class member likely will be relatively small, especially given the cost of the Products at issue and the burden and expense of individual prosecution of the complex litigation necessitated by Defendants' conduct. Thus, it would be virtually impossible for members of the Class individually to effectively redress the wrongs done to them. Moreover, even if members of the Class could afford individual actions, it would still not be preferable to class-wide litigation. Individualized actions present the potential for inconsistent or contradictory judgments. By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

59.     In the alternative, the Class may be certified because Defendants have acted or refused to act on grounds generally applicable to the Class, thereby making appropriate preliminary and final equitable relief with respect to each Class.

60.     The requirements for maintaining a class action pursuant to Rule 23(b)(2) are also met, as Defendants have acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Class as a whole.

# CAUSES OF ACTION

## FIRST CAUSE OF ACTION
### Violation of Breach of Express Warranty
### (On behalf of the New York and California Classes)

61.     Plaintiffs incorporate each and every allegation contained in the paragraphs above as if rewritten herein.

62.     Plaintiffs' express warranty claims are based on violations of N.Y. CLS UCC § 2-313 and § 2-607 and Cal. Com. Code §2313. Defendants were afforded reasonable notice of this claim in advance of the filing of this complaint.

63.     Defendants made express warranties to Plaintiffs and members of the Class that the Products they purchased contained no added preservatives.

64.     The express warranties made to Plaintiffs and members of the Class appear on every Product label. This warranty regarding the nature of the Product marketed by Defendants specifically relates to the goods being purchased and became the basis of the bargain.

65.     Plaintiffs and Class members purchased the Products in the belief that they conformed to the express warranties that were made on the Products' labels.

66.     Defendants breached the express warranties made to Plaintiffs and members of the Class by failing to supply goods that conformed to the warranties it made. As a result, Plaintiffs and members of the Class suffered injury and deserve to be compensated for the damages they suffered.

67.     Plaintiffs and the members of the Class paid money for the Products. However, Plaintiffs and the members of the Class did not obtain the full value of the advertised Products. If Plaintiffs and other members of the Class had known of the true nature of the Products, they would not have purchased them or paid less for them.

Accordingly, Plaintiffs and members of the Class have suffered injury in fact and lost money or property as a result of Defendants' wrongful conduct.

68.    Plaintiffs and Class members are therefore entitled to recover damages, punitive damages, equitable relief such as restitution and disgorgement of profits, and declaratory and injunctive relief.

**SECOND CAUSE OF ACTION**
**Unlawful Business Practices**
**Violation of The Unfair Competition Law ("UCL")**
**Bus. & Prof. Code §§17200,** *et seq.*
**(On behalf of the California Class)**

69.    Plaintiff Albrigo incorporates each and every allegation contained in the paragraphs above as if restated herein.

70.    The UCL defines unfair business competition to include any "unlawful, unfair or fraudulent" act or practice, as well as any "unfair, deceptive, untrue or misleading" advertising. Cal. Bus. Prof. Code §17200.

71.    A business act or practice is "unlawful" if it violates any established state or federal law.

72.    Defendants' acts, omissions, misrepresentations, practices, and/or non-disclosures concerning the Products alleged herein, constitute "unlawful" business acts and practices in that they violate the Federal Food, Drug, and Cosmetic Act, 21 U.S.C. §§301, et seq. and its implementing regulations, including, at least, the following sections:

      a.    21 U.S.C. §343(a), which deems food misbranded when its labeling contains a statement that is false or misleading in any particular;

b.  21 C.F.R. §102.5(a)-(d), which prohibits the naming of foods so as to create an erroneous impression about the presence or absence of ingredient(s) or component(s) therein;

c.  21 U.S.C. §§331and 333, which prohibits the introduction of misbranded foods into interstate commerce.

d.  21 C.F.R. §101.3 and 21 C.F.R. §101.36 as described above, pertaining to, *inter alia,* use of common or usual names.

73.    California has expressly adopted federal labeling requirements as its own pursuant to the Sherman Food, Drug, and Cosmetic Law, Cal. Health & Safety Code § 109875 et seq. (the "Sherman Law"), the Sherman Law, which provides that "[a]ll food labeling regulations and any amendments to those regulations adopted pursuant to the federal act, in effect on January 1, 1993, or adopted on or after that date shall be the food regulations of this state." Cal. Health & Safety Code § 110100.

74.    Each of Defendants' violations of federal law and regulations violates California's Sherman Food, Drug, and Cosmetic Law, Cal. Health & Safety Code § 109875 et seq. (the "Sherman Law"), including, but not limited to, the following sections:

75.    Section 110100 (adopting all FDA regulations as state regulations);

76.    Section 110290 ("In determining whether the labeling or advertisement of a food . . . is misleading, all representations made or suggested by statement, word, design, device, sound, or any combination of these, shall be taken into account.");

77.    Section 110390 ("It is unlawful for any person to disseminate any false advertisement of any food. . . .  An advertisement is false if it is false or misleading in any particular.");

78.    Section 110395 ("It is unlawful for any person to manufacture, sell, deliver, hold, or offer for sale any food . . . that is falsely advertised.");

79.     Section 110398 ("It is unlawful for any person to advertise any food, drug, device, or cosmetic that is adulterated or misbranded.");

80.     Section 110400 ("It is unlawful for any person to receive in commerce any food . . . that is falsely advertised or to deliver or proffer for delivery any such food . . . ."); and

81.     Section 110660 ("Any food is misbranded if its labeling is false or misleading in any particular.").

82.     Each of the challenged omissions, statements, and actions by Defendants violate the FDCA, and the Sherman Law, and, consequently, violates the "unlawful" prong of the UCL.

83.     Defendants' conduct is further "unlawful" because it violates California's False Advertising Law, Cal. Bus. & Prof. Code § 17500 et seq. (the "FAL"), and California's Consumers Legal Remedies Act, Cal. Civ. Code § 1750 et seq. (the "CLRA"), as discussed in the claims below.

84.     By committing the unlawful acts and practices alleged above, Defendants have engaged, and continue to be engaged, in unlawful business practices within the meaning of California Business and Professions Code §§17200, *et seq.*

85.     Through its unlawful acts and practices, Defendants have obtained, and continue to unfairly obtain, money from members of the Class. As such, Plaintiff requests that this Court cause Defendants to restore this money to Plaintiff and all members of the Class, to disgorge the profits Defendant made on these transactions, and to enjoin Defendants from continuing to violate the Unfair Competition Law or violating it in the same fashion in the future. Otherwise, the Class may be irreparably harmed and denied an effective and complete remedy if such an order is not granted.

## THIRD CAUSE OF ACTION
**Unfair Business Practices**
**Violation of The Unfair Competition Law**
**Bus. & Prof. Code §§ 17200, *et seq*.**
**(On behalf of the California Class)**

86.    Plaintiff Albrigo incorporates each and every allegation contained in the paragraphs above as if restated herein.

87.    The UCL defines unfair business competition to include any "unlawful, unfair or fraudulent" act or practice, as well as any "unfair, deceptive, untrue or misleading" advertising. Cal. Bus. Prof. Code §17200.

88.    A business act or practice is "unfair" under the Unfair Competition Law if the reasons, justifications and motives of the alleged wrongdoer are outweighed by the gravity of the harm to the alleged victims.

89.    Defendants have violated, and continue to violate, the "unfair" prong of the UCL through their misleading description of the Products. The gravity of the harm to members of the Class resulting from such unfair acts and practices outweighs any conceivable reasons, justifications, or motives of Defendants for engaging in such deceptive acts and practices. By committing the acts and practices alleged above, Defendants engaged, and continued to engage, in unfair business practices within the meaning of California Business and Professions Code §§17200, *et seq.*

90.    Through their unfair acts and practices, Defendants obtained, and continue to unfairly obtain, money from members of the Class. As such, Plaintiff has been injured and requests that this Court cause Defendants to restore this money to Plaintiff and the members of the Class, to disgorge the profits Defendants made on their Products, and to enjoin Defendants from continuing to violate the Unfair Competition Law or violating it in the same fashion in the future. Otherwise, the Class may be irreparably harmed and denied an effective and complete remedy if such an Order is not granted.

## FOURTH CAUSE OF ACTION
### Fraudulent Business Practices
### Violation of The Unfair Competition Law
### Bus. & Prof. Code §§ 17200, *et seq*.
### (On behalf of the California Class)

91.    Plaintiff Albrigo incorporates each and every allegation contained in the paragraphs above as if restated herein.

92.    The UCL defines unfair business competition to include any "unlawful, unfair or fraudulent" act or practice, as well as any "unfair, deceptive, untrue or misleading" advertising. Cal. Bus. & Prof. Code §17200.

93.    A business act or practice is "fraudulent" under the Unfair Competition Law if it actually deceives or is likely to deceive members of the consuming public.

94.    Defendants' acts and practices of mislabeling their Products in a manner to suggest they principally contained their characterizing ingredients.

95.    As a result of the conduct described above, Defendants have been, and will continue to be, unjustly enriched at the expense of Plaintiff and members of the proposed Class. Specifically, Defendants have been unjustly enriched by the profits it has obtained from Plaintiff and the Class from the purchases of its Products.

96.    Through its fraudulent acts and practices, Defendants have improperly obtained, and continue to improperly obtain, money from members of the Class. As such, Plaintiff requests that this Court cause Defendants to restore this money to Plaintiff and the Class, to disgorge the profits Defendants have made, and to enjoin Defendants from continuing to violate the Unfair Competition Law or violating it in the same fashion in the future. Otherwise, the Class may be irreparably harmed and denied an effective and complete remedy if such an Order is not granted.

# FIFTH CAUSE OF ACTION
## False Advertising
## Violation of California Business & Professions Code §§ l7500, *et seq.*
### (On behalf of the California Class)

97.    Plaintiff Albrigo incorporates each and every allegation contained in the paragraphs above as if restated herein.

98.    Defendants use advertising and packaging to sell their Products. Defendants disseminate advertising regarding their Products which by their very nature are deceptive, untrue, or misleading within the meaning of California Business & Professions Code §§17500, *et seq.* because those advertising statements contained on the labels are misleading and likely to deceive, and continue to deceive, members of the putative Class and the general public.

99.    In making and disseminating the statements alleged herein, Defendants knew or should have known that the statements were untrue or misleading, and acted in violation of California Business & Professions Code §§17500, *et seq.*

100.    The misrepresentations and non-disclosures by Defendants of the material facts detailed above constitute false and misleading advertising and therefore constitute a violation of California Business & Professions Code §§17500, *et seq.*

101.    Through its deceptive acts and practices, Defendants have improperly and illegally obtained money from Plaintiff and the members of the Class. As such, Plaintiff requests that this Court cause Defendants to restore this money to Plaintiff and the members of the Class, and to enjoin Defendants from continuing to violate California Business & Professions Code §§17500, *et seq.*, as discussed above. Otherwise, Plaintiff and those similarly situated will continue to be harmed by Defendants' false and/or misleading advertising.

102.    Pursuant to California Business & Professions Code §17535, Plaintiff seeks an Order of this Court ordering Defendants to fully disclose the true nature of its

misrepresentations. Plaintiff additionally requests an Order: (1) requiring Defendants to disgorge its ill-gotten gains, (2) award full restitution of all monies wrongfully acquired by Defendants and (3), interest and attorneys' fees. Plaintiff and the Class may be irreparably harmed and denied an effective and complete remedy if such an Order is not granted.

### SIXTH CAUSE OF ACTION
**Violation of the Consumers Legal Remedies Act**
**California Civil Code §§ 1750, *et seq*.**
**(On behalf of the California Class)**

103.    Plaintiff Albrigo incorporates each and every allegation contained in the paragraphs above as if restated herein.

104.    This cause of action is brought pursuant to the Consumers Legal Remedies Act, California Civil Code §§1750, *et seq*. (the "CLRA").

105.    Plaintiff and each member of the proposed Class are "consumers" within the meaning of Civil Code §1761(d).

106.    The purchases of the Products by consumers constitute "transactions" within the meaning of Civil Code §1761(e) and the Products constitute "goods" within the meaning of Civil Code §1761(a).

107.    Defendants have violated, and continue to violate, the CLRA in at least the following respects:

a.  §1770(5) pertaining to misrepresentations regarding the characteristics of goods sold—specifying that misleading representations regarding ingredients violate the CLRA;

b.  §1770(7) pertaining to misrepresentations regarding the standard, quality, or grade of goods sold; and

c.  § 1770(9) pertaining to goods advertised with the intent not to provide what is advertised.

108.   Defendants knew, or should have known, that the labeling of their Products violated consumer protection laws, and that these statements would be relied upon by Plaintiff and the members of the Class.

109.   The representations were made to Plaintiff and all members of the Class. Plaintiff relied on the accuracy of the representations on Defendants' labels which formed a material basis for his decision to purchase the Products. Moreover, based on the very materiality of Defendants' misrepresentations uniformly made on or omitted from their Product labels, reliance may be presumed or inferred for all members of the Class.

110.   Defendants carried out the scheme set forth in this Complaint willfully, wantonly, and with reckless disregard for the interests of Plaintiff and the Class, and as a result, Plaintiff and the Class have suffered an ascertainable loss of money or property.

111.   Plaintiff and the members of the Class request that this Court enjoin Defendant from continuing to engage in the unlawful and deceptive methods, acts and practices alleged above, pursuant to California Civil Code §1780(a)(2). Unless Defendants are permanently enjoined from continuing to engage in such violations of the CLRA, future consumers of Defendants' Products will be damaged by their acts and practices in the same way as have Plaintiff and the members of the proposed Class.

112.   In conjunction with this Complaint, Plaintiff served a CLRA demand pursuant to Civil Code §1782, notifying Defendants of the conduct described herein and that such conduct was in violation of particular provisions of Civil Code §1770. If Defendants fail to provide a proper remedy within 30 days Plaintiffs will amend the Complaint to seek damages pursuant to Civil Code § 1780(a).

### SEVENTH CAUSE OF ACTION
### Violation of N.Y. Gen. Bus. Law §§ 349, *et seq.*
### (On behalf of the New York Class)

113.    Plaintiff Taylor incorporates each and every allegation contained in the paragraphs above as if rewritten herein.

114.    New York General Business Law Section 349 ("GBL § 349") declares unlawful "deceptive acts or practices in the conduct of any business, trade, or commerce or in the furnishing of any service in this state ..."

115.    Defendants' labeling and marketing of the Product, as alleged herein, constitutes "deceptive" acts and practices within the meaning of GBL § 349.

116.    Plaintiff Taylor and Class Members have been injured inasmuch as they paid for and/or paid a premium for a Product that did not have the characteristics marketed, including that contrary to its label, it was not devoid of preservatives.

117.    GBL § 349(h) provides in relevant part that "any person who has been injured by reason of any violation of [GBL § 349] may bring an action in his own name to enjoin such unlawful act or practice, an action to recover his actual damages or fifty dollars, whichever is greater, or both such actions. The court may, in its discretion, increase the award of damages to an amount not to exceed three times the actual damages up to one thousand dollars if the court finds the defendant willfully or knowingly violated this section. The court may award reasonable attorney's fees to a prevailing plaintiff."

118.    In accordance with § 349(h), Plaintiff Taylor seeks an order enjoining Defendants from continuing the unlawful deceptive acts and practices set forth above.

119.   Absent a Court order enjoining the unlawful deceptive acts and practices, Defendants will continue its false and misleading marketing campaign and, in doing so, irreparably harm each member of the Class.

120.   As a consequence of Defendants' deceptive acts and practices, Plaintiff Taylor and other members of the Class suffered an ascertainable loss of monies. By reason of the foregoing, Plaintiff and other members of the Class seek actual damages or statutory damages of $50 per violation, whichever is greater, as well as punitive damages. N.Y. Gen. Bus. Law § 349(h).

## EIGHTH  CAUSE OF ACTION
### Violation of N.Y. Gen. Bus. Law §§ 350, *et seq.*
### (On behalf of the New York Class)

121.   Plaintiff Taylor incorporates each and every allegation contained in the paragraphs above as if rewritten herein.

122.   N.Y. Gen. Bus. Law § 350 declares false advertising in the conduct of any business, trade or commerce or in the furnishing of any service in this state to be unlawful. The term 'false advertising' means advertising, including labeling, of a commodity, or of the kind, character, terms or conditions of any employment opportunity if such advertising is misleading in a material respect. In determining whether any advertising is misleading, there shall be taken into account (among other things) not only representations made by statement, word, design, device, sound or any combination thereof, but also the extent to which the advertising fails to reveal facts material in the light of such representations with respect to the commodity or employment to which the advertising relates under the conditions proscribed in said advertisement, or under such conditions as are customary or usual. 91. N.Y. Gen. Bus. Law § 350-a(l).

COMPLAINT FOR DAMAGES, EQUITABLE, DECLARATORY, AND INJUNCTIVE RELIEF

123.   Defendants' labeling and advertisements contain untrue and materially misleading statements regarding the contents of the Supplement.

124.   Plaintiff Taylor and members of the Class have been injured inasmuch as they relied upon the labeling and advertising and paid a premium for a product that did not conform to its representations. Accordingly, Plaintiff and Class members received less than what they bargained and/or for which they paid a premium.

125.   Defendants' advertising and product labeling induced the Plaintiff and Class members to buy their Product.

126.   Defendants knew, or by exercising reasonable care should have known, that its statements and representations as described in this Complaint were untrue and/or misleading.

127.   Defendants made the material misrepresentations described in this Complaint on its Product labels.

128.   As a result of Defendants' false or misleading labeling and advertising, Plaintiff and Class members are entitled to monetary damages, statutory damages, injunctive relief, restitution, disgorgement of all monies obtained by means of Defendants' unlawful conduct, interest, and attorneys' fees and costs.

129.   As a direct and proximate result of Defendants' violation of New York General Business Law §350, Plaintiff Taylor and the other members of the New York Class have also suffered an ascertainable loss of monies. By reason of the foregoing, Plaintiff Taylor and other members of the New York Subclass also seek actual damages or statutory damages of $500 per violation, whichever is greater, as well as punitive damages. N.Y. Gen. Bus. Law § 350-e.

## NINTH CAUSE OF ACTION
### Restitution Based On Quasi-Contract/Unjust Enrichment

130.   Plaintiffs incorporate each and every allegation contained in the paragraphs above as if rewritten herein.

131.   Plaintiffs plead this cause of action in the alternative.

132.   Defendants' conduct in enticing Plaintiffs and the Class to purchase their Products with false and misleading packaging is unlawful because the statements contained on the Defendants' Product labels are untrue.

133.   Defendants took monies from Plaintiffs and the Class for these Products and have been unjustly enriched at the expense of Plaintiffs and the Class as a result of their unlawful conduct alleged herein, thereby creating a quasi-contractual obligation on Defendants to restore these ill-gotten gains to Plaintiffs and the Class.  It is against equity and good conscience to permit Defendants to retain the ill-gotten benefits received from Plaintiffs and Class members.

134.   As a direct and proximate result of Defendants' unjust enrichment, Plaintiffs and the Class are entitled to restitution or restitutionary disgorgement in an amount to be proved at trial.

## PRAYER FOR RELIEF

THEREFORE, Plaintiffs, on behalf of themselves and on behalf of the other members of the Class and for the Counts so applicable on behalf of the general public request an award and relief as follows:

A.     An order certifying that this action is properly brought and may be maintained as a class action, that Plaintiffs be appointed Class Representative, and Plaintiffs' counsel be appointed Lead Counsel for the Class.

COMPLAINT FOR DAMAGES, EQUITABLE, DECLARATORY, AND INJUNCTIVE RELIEF

B.    Restitution in such amount that Plaintiffs and all members of the Class paid to purchase Defendants' Product or restitutionary disgorgement of the profits Defendants obtained from those transactions, for Causes of Action for which they are available.

C.    Compensatory damages for Causes of Action for which they are available.

D.    Statutory penalties for Causes of Action for which they are available.

E.    Punitive Damages for Causes of Action for which they are available.

F.    A declaration and Order enjoining Defendants from marketing and labeling its Products deceptively, in violation of laws and regulations as specified in this Complaint.

G.    An Order awarding Plaintiffs their costs of suit, including reasonable attorneys' fees and pre and post judgment interest.

H.    An Order requiring an accounting for, and imposition of, a constructive trust upon all monies received by Defendants as a result of the unfair, misleading, fraudulent and unlawful conduct alleged herein.

I.    Such other and further relief as may be deemed necessary or appropriate.

1

## **DEMAND FOR JURY TRIAL**

2

3

   Plaintiffs hereby demand a trial by jury on all causes of action or issues so triable.

4

5

DATED: January 23, 2024                    Respectfully submitted,

6

7

8

9

Michael D. Braun
**KUZYK LAW, LLP**
1999 Avenue of the Stars, Ste. 1100
Los Angeles, California 90067
Telephone: (213) 401-4100
Email: mdb@kuzykclassactions.com

10

11

12

13

Peter N. Wasylyk (pro hac vice pending)
**LAW OFFICES OF PETER N. WASYLYK**
1307 Chalkstone Avenue
Providence, RI 02908
Telephone:  (401) 831-7730
Facsimile:   (401) 861-6064
Email: pnwlaw@aol.com

14

15

16

17

18

19

*Counsel for Plaintiffs*

20

21

22

23

24

25

26

27

28

COMPLAINT FOR DAMAGES, EQUITABLE, DECLARATORY, AND INJUNCTIVE RELIEF